UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

        Plaintiff,

v.

Barbara Lynnae Puro,

        Defendant.

Crim. No. 11-288 (JNE/JJK)
Civil No. 13-1156 (JNE)
ORDER

---

Defendant Barbara Lynnae Puro pled guilty to conspiracy to commit wire fraud. The Court sentenced her to a within-guidelines term of 60 months imprisonment to be followed by three years of supervised release and ordered her to pay nearly $6 million in mandatory restitution to her victims. Puro did not appeal.

The matter is now before the Court on Puro's motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. ECF No. 79. For the reasons discussed below, the motion is denied.

## **Background**

Puro was indicted in September of 2011 on one count of conspiracy to commit wire fraud under 18 U.S.C. § 371 and twelve counts of mortgage fraud through the use of interstate wires under 18 U.S.C. § 1343. According to the Indictment, Puro was a licensed real estate agent who participated in a scheme with several co-conspirators to fraudulently obtain mortgages on a number of single-family homes in the Twin Cities area; after closing on the homes, they diverted the lenders' money through various companies back to themselves.

1

Throughout her pretrial proceedings, Puro was represented by a CJA panel attorney. However, shortly before trial was scheduled to begin in February of 2012, Puro retained a new attorney, Eric Newmark. Shortly thereafter, Puro appeared with Newmark for a change of plea hearing during which she pled guilty to the conspiracy charge, which by statute carried a maximum penalty of 60 months imprisonment. No written plea agreement was filed, and the Government's attorney informed the Court that "the only agreement . . . is she's going to plead to Count 1. The remaining charges will be dismissed, which effects [sic] obviously the statutory maximum, and everything else is subject to argument at an evidentiary hearing as such." Transcript of Plea Hearing at 6, ECF No. 53. Puro and Newmark agreed with that characterization of the parties' oral plea agreement.

The probation officer subsequently prepared a Pre-Sentence Investigation Report ("PSI") and calculated the sentencing guideline range to be 87-108 months imprisonment, well above the statutory maximum of 60 months for the conspiracy offense. In his pre-sentencing filings, Newmark objected to the amount of restitution listed in the PSI and the enhancements that had been applied for the amount of loss caused by Puro's conduct, the number of victims, and the use of sophisticated means; he requested an evidentiary hearing on those issues. Defendant's Position on Sentencing, ECF No. 62.

Sentencing was held in August of 2012. At the outset of the hearing, Newmark and Puro withdrew all objections to the PSI in exchange for the Government's recommendation of an additional point deduction for acceptance of responsibility, which the Court accepted. Then, after determining the applicable guidelines range to be 60 months and considering the statutory sentencing factors, the Court sentenced Puro to a term of 60 months imprisonment with three years of supervised release and ordered mandatory restitution.

Puro did not file a direct appeal. In May of 2013, she filed pro se the § 2255 motion that is currently before the Court. ECF No. 79. In her motion, Puro seeks to vacate or set aside her sentence on four grounds:

(1) "the exact criminal misconduct that I am guilty of" was never proven because "[c]ounsel waived my right to an evidentiary hearing," resulting in an overstatement of her role in the scheme, the amount of loss attributable to her, and the amount of restitution;

(2) her sentence was "more harsh than the co-conspirators in my indictment," as "5 african americans in my case" were given lower sentences despite having felonies on their records;

(3) the sentencing guidelines were miscalculated, specifically because she did not warrant a two-level enhancement for abusing a position of trust, the number of victims was never proven, and she did not use sophisticated means; and

(4) the gross receipts were never proven and thus that guidelines enhancement was in error; "the court failed to consider economic circumstances prior to ordering restitution"; and the sentence should have been reduced for "proffer arraignments" because she "spent hours helping the government and agreed to testify against the co conspirators 2 years prior to my indicement."

*Id.* at 4, 5, 7, 8. In addition, Puro asserts in her motion that she did not pursue any of these grounds on a direct appeal because "[m]y attorney did not advise me of rights to appeal when I contacted him, he said I was not represented by him for any appeal process." *Id.* at 4.

## Discussion

The various grounds for relief that Puro asserts in her motion can be divided into three categories: (1) claims of legal error in the restitution order; (2) claims of legal error in calculating the sentencing guidelines range and considering the statutory sentencing factors; and (3) constitutional claims of ineffective assistance of counsel.

By its terms, 28 U.S.C. § 2255 provides a mechanism for a defendant in federal custody to seek post-conviction relief on the grounds that "the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . ." 28 U.S.C. § 2255(a).

For the reasons discussed below, none of Puro's claims entitle her to the relief she seeks under § 2255.

### I. Challenges to restitution order.

First, as the Court indicated in its Order of December 13, 2013, ECF No. 91, Puro's claims regarding errors in the restitution order are not cognizable in this collateral proceeding. Because the federal habeas statute plainly affords relief only to a "prisoner in custody . . . claiming the right to be released," "a federal prisoner cannot challenge the restitution portion of [her] sentence using 28 U.S.C. § 2255 . . . ." *U.S. v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003).

Puro's claims of error in the restitution order are therefore denied on their face, as they can offer no basis for relief in this § 2255 proceeding. *See* 28 U.S.C. § 2255(b) (movant is entitled to an evidentiary hearing on the claims presented in her motion to vacate or set aside her sentence "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

### II. Challenges to calculation of guidelines range and consideration of statutory sentencing factors.

Second, Puro's attacks on the Court's calculation of the guidelines range and its consideration of the statutory sentencing factors are also not cognizable here. "A motion under § 2255 is not a substitute for a direct appeal . . . and is not the proper way to complain about simple

trial errors . . . ." *Anderson v. U.S.*, 25 F.3d 704, 706 (8th Cir. 1994) (internal citations omitted). *See also U.S. v. Ward*, 55 F.3d 412, 413 (8th Cir. 1995) ("Collateral proceedings under 28 U.S.C. § 2255 cannot be made to do service for an appeal."). "The failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion, and this rule applies equally when the conviction was entered pursuant to a guilty plea." *Matthews v. U.S.*, 114 F.3d 112, 113 (8th Cir. 1997). *See also Anderson*, 25 F.3d at 706 ("A petitioner simply cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not.").

An exception to this procedural default rule may be made if the claimed errors "rise to the level of a 'miscarriage of justice.'" *U.S. v. Perales*, 212 F.3d 1110, 1111 (8th Cir. 2000) (quoting *Auman v. U.S.*, 67 F.3d 157, 161 (8th Cir. 2010). *See also King v. U.S.*, 595 F.3d 844, 852 (8th Cir. 2010) ("We have recognized . . . that 'ordinary questions of guideline interpretation' are not remediable on a § 2255 motion unless the error rises to the level of being a miscarriage of justice."). The "miscarriage of justice" standard generally provides an exception to the procedural default rule for actual innocence claims and claims of legal error that were not discoverable in time for a direct appeal, such that the petitioner can show cause and prejudice for the default. *See Auman*, 67 F.3d at 161; *Sun Bear v. U.S.*, 644 F.3d 700, 704-06 (8th Cir. 2011).

What is clear is that procedural default of the opportunity to raise ordinary questions of guideline interpretation and sentencing decisions of the sort that Puro asserts in this motion do not rise to the level of a miscarriage of justice. As a result, Puro's procedurally defaulted nonconstitutional claims of error in the calculation of her guidelines range and the determination of her sentence may not be heard for the first time here in collateral proceedings, and they are therefore also denied on their face.

### III.   Ineffective assistance of counsel.

In contrast to Puro's direct attacks on her restitution order and sentence, constitutional claims of ineffective assistance of counsel may serve as a basis for relief in collateral proceedings. *U.S. v. McAdory*, 501 F.3d 868, 872-73 (8th Cir. 2007). Specifically relevant here, a petitioner's allegation that her nonconstitutional claims of error in her sentencing proceedings were procedurally defaulted by her attorney may be heard "as an independent stand-alone ineffective assistance of counsel claim alleging a violation of h[er] Sixth Amendment right to counsel" for the first time in § 2255 proceedings. *U.S. v. Perales*, 212 F.3d 1110, 1111 (8th Cir. 2000).

Construed liberally, Puro's motion asserts two distinct claims that Newmark, her attorney at sentencing, provided ineffective assistance of counsel.

### A.  Waiver of evidentiary hearing.

Puro's first claim is that Newmark was ineffective when he "waived my right to an evidentiary hearing" at sentencing by dropping all objections to the PSI and thus releasing the Government from its burden of proving the guidelines enhancements and the amount of restitution she owed. Section 2255 Motion, ECF No. 79 at 4. According to Puro, this resulted in her criminal misconduct and the loss amount attributable to her actions being overstated. *Id.*

However, Puro's allegation regarding the waiver of the evidentiary hearing is affirmatively refuted by the record, such that she can show neither that Newmark's performance fell below an objective standard of reasonableness nor that she was prejudiced by his actions. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring both showings to establish ineffective assistance claim). At sentencing, Puro herself unambiguously stated that she wished

to waive the evidentiary hearing and all objections to the PSI in exchange for the Government's recommendation of an additional point for acceptance of responsibility.  Transcript of Sentencing Hearing at 4-6, ECF No. 84.  Puro does not allege that this waiver was unknowing or coerced or based on bad information from Newmark.  In fact, Newmark explicitly advised her that, by waiving all objections, she would be relieving the Government of its burden to prove the number of victims, the amount of loss attributable to her actions, and whether she used sophisticated means.  *Id.*  Puro confirmed that she understood.  *Id.*

In addition, Newmark cautioned Puro on the record that, with respect to the sentencing guidelines range, "however they're calculated pursuant to this agreement they are still going to be greater than the statutory maximum," which Puro indicated that she understood.  *Id.* at 5-6.  The Court also impressed upon Puro that the deal she had made for the additional point would not "actually have an effect" on the calculation of the guidelines range because, even with the third point for acceptance of responsibility, it would still be well above the statutory maximum of 60 months.  *Id.* at 7.  Yet again, Puro stated that she understood and wished to withdraw all objections.  *Id.*

Thus, the record demonstrates that Newmark properly and accurately advised Puro, and Puro fully understood, both that she was releasing the Government from its burden of proving all of the enhancements that she now contests and that the concession she was receiving from the Government in return was of little practical significance to the calculation of the guidelines range.  Where a petitioner has not alleged that her waiver of a right resulted from "misunderstanding, duress, or misrepresentation by others," her representations in court "constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of veracity.  The subsequent presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-73 (1977). *See Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (defendant's statements made during plea hearing are entitled to strong presumption of verity).

Furthermore, the most direct consequence of Puro's waiver, of course, was that the evidentiary hearing itself was not held. In the context of an ineffective assistance claim, Newmark is entitled to a strong presumption that he sought to avoid the evidentiary hearing pursuant to a sound defense strategy. *See Strickland*, 466 U.S. at 689 ("A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal quotation omitted).

In the circumstances of this case, where Newmark had negotiated a 60-month statutory maximum for Puro, where the guidelines range calculated in the PSI was well above that cap, and where the Government stood ready to prove the contested matters with testimony and documentary evidence, *see* Government's Position on Sentencing/Sentencing Memorandum, ECF No. 67, it was evident at the time the waiver was entered that the evidentiary hearing would not have provided a benefit to Puro. *See* Transcript of Sentencing Hearing at 7, ECF No. 84 (Court's dialogue with Puro emphasizing that "the guideline range is 60 . . . [a]nd almost no matter what happens it's still 60, okay?"). In the face of this record, Puro's retrospective, conclusory assertion to the contrary is insufficient. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.")

Puro's claim that Newmark provided ineffective assistance of counsel by waiving the evidentiary hearing at sentencing is thus belied by the record and is therefore denied. *See Watson v. U.S.*, 493 F.3d 960, 963 (8th Cir. 2007) ("[N]o hearing is required where the petitioner's claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.") (internal quotation omitted); *Voytik v. U.S.*, 778 F.2d 1306, 1308 (8th Cir. 1985) ("[A] petition which consists only of conclusory allegations unsupported by specifics or allegations that, in the face of the record, are wholly incredible . . . is insufficient to overcome the barrier to an evidentiary hearing on a section 2255 motion.") (internal quotation and citations omitted).

### B. Failure to consult.

Puro's second claim is that Newmark was ineffective because he "did not advise me of rights to appeal when I contacted him, he said I was not represented by him for any appeal process." ECF No. 79 at 4. Because this allegation relates primarily to "purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light," it required an evidentiary hearing to resolve. *Watson*, 493 F.3d at 964 (citing and quoting *Machibroda v. U.S.*, 368 U.S. 487, 494-95 (1962)).

The Court therefore appointed counsel for Puro and requested a memorandum addressing this claim. ECF Nos. 90, 91. After that memorandum was filed by Puro's counsel, ECF No. 94, the Court held an evidentiary hearing. ECF No. 101. At the hearing, Puro, her ex-husband Deron Puro, and her mother Diane Schrader testified on her behalf, while the Government offered Newmark's testimony. *Id.* The parties have since filed supplemental briefing. ECF Nos. 104, 105.

The evidence adduced at the hearing establishes that Puro never instructed Newmark to file a notice of appeal, and he never advised her of her appeal rights or asked her if she wanted to appeal. In these circumstances, where a defendant expressed no clear direction regarding an appeal, counsel's failure to consult with her to advise her of the advantages and disadvantages of appealing and to make a reasonable effort to discern her wishes may constitute ineffective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). However, rather than constituting per se ineffective assistance, *see Yodprasit v. U.S.*, 294 F.3d 966, 969 (8th Cir. 2002) (counsel's failure to follow client's instructions to file an appeal constitutes per se ineffective assistance), the Supreme Court has held that this type of "failure to consult" claim is subject to the two-step *Strickland* test of performance and prejudice. *Flores-Ortega*, 528 U.S. at 477.

Because the *Strickland* test is conjunctive, "[t]he court need not address both components if the movant makes an insufficient showing on one of the prongs." *Engelen*, 68 F.3d 238, 241 (8th Cir. 1995). Nevertheless, as discussed below, Puro's claim fails at both steps.

### 1. Performance.

At step one of the *Strickland* analysis, Puro must show that Newmark's representation "fell below an objective standard of reasonableness." *Flores-Ortega*, 528 U.S. at 477 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). In applying this standard to the type of factual circumstances at hand, the Supreme Court has determined that while it may be "better practice . . . for counsel routinely to consult with the defendant regarding the possibility of an appeal," there is no "constitutionally imposed duty" to do so under the Sixth Amendment unless "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant

10

reasonably demonstrated to counsel that [s]he was interested in appealing." *Id.* at 479-80. Newmark's failure to consult with Puro about an appeal does not fall below an objective standard of reasonableness under either approach.

First, the testimony elicited at the evidentiary hearing establishes that Puro did not reasonably demonstrate to Newmark that she was interested in appealing. Early in her case, before she retained Newmark, Puro was represented by a different attorney with whom she developed a theory of defense that the banks she and her co-conspirators defrauded had been complicit in the scheme. Based on her desire to go to trial with this theory, Puro rejected a plea offer early on in her case according to which she would have pled guilty to the conspiracy count, capping her potential sentence at 60 months imprisonment. The Government subsequently withdrew the offer.

When Puro retained Newmark shortly before trial was set to begin, he believed that the theory of defense Puro had developed with her previous attorney had little chance of producing a favorable outcome at trial in the face of the Government's overwhelming evidence, and he was concerned that the Government would pursue a very lengthy sentence if she were convicted on some or all of the thirteen counts she faced. Newmark explored other possible defense strategies, but came to the same conclusion: that Puro was very likely to be convicted at trial and would face a very significant sentence. As a result, Newmark restarted plea negotiations with the Government, and was able to convince the Government to renew its offer to dismiss the twelve wire fraud counts in exchange for a guilty plea to the conspiracy count.

Puro was resistant to pleading guilty, but was eventually convinced of the wisdom of accepting the offer. She formally did so at the change of plea hearing in March of 2012. This negotiated agreement was beneficial to both parties: for Puro, whose potential sentence was now

11

capped at 60 months, and for the Government, who avoided the expense and inherent risk of a trial.

At the change of plea hearing, Puro, as noted above, was advised and understood that she retained the right to put the Government to its burden of proof with regard to sentencing. Puro was also specifically advised by the Court that she retained the right to appeal whatever sentence she may receive. Transcript of Change of Plea Hearing at 12-13, ECF No. 53. The sentencing hearing was then set for August of 2012.

As that sentencing hearing approached, Puro made clear to Newmark her desire to put the Government to its proof through an evidentiary hearing. Newmark therefore prepared for an evidentiary hearing, but also counseled Puro that an evidentiary hearing at sentencing would not benefit her because of the strength of the Government's evidence and the fact that, even if the defense were to prevail on all of its guidelines challenges, the applicable sentencing range would not fall below the 60 month statutory maximum for the conspiracy offense to which Puro had pled guilty. As with the decision to accept the Government's plea offer rather than face a much lengthier sentence upon a likely conviction at trial, Newmark considered it his job in the sentencing phase to convince Puro to "get out of her own way."

The strategic disagreement about the risks of an evidentiary hearing aside, Newmark and Puro both approached the sentencing hearing with the hope that they could convince the Court to impose a sentence less than the 60 months statutory maximum. At Puro's instruction, Newmark requested a sentence of probation, though they both realized that it was unrealistic to expect that the Court would not impose a term of imprisonment. Newmark believed that Puro's best hope for a sentence below 60 months lay with a show of genuine remorse and acceptance of responsibility.

On the day of sentencing, immediately prior to the start of the hearing, Newmark observed a large number of Government witnesses and stacks of documents assembled in the courtroom. Seeing that, Newmark took the final opportunity to speak to Puro in the hallway outside the courtroom and again advised her against going forward with the evidentiary hearing. Newmark counseled Puro that the likelihood of success was extremely low and the benefit of a favorable result was essentially nil, and he impressed upon her that an evidentiary hearing would not be compatible with their attempts to persuade the Court to impose less than 60 months because it would only serve to highlight her criminal conduct.

During this final consultation, Puro agreed with Newmark's assessment and decided to change course. At the sentencing hearing that followed, Puro freely waived the evidentiary hearing and all objections to the PSI on the record in exchange for a third point for acceptance of responsibility, while fully understanding the costs and benefits of doing so. With that waiver, the parties agreed, and the Court found, that Puro's sentencing guidelines range was 60 months; but for the 60 month statutory maximum, Puro's sentencing range would have been 87-108 months.

Puro, who was nervous under the circumstances, then made an allocution, during which Newmark had to intervene when Puro failed to meaningfully accept responsibility for her actions. At the conclusion of the hearing, the Court sentenced Puro to the guidelines term of 60 months imprisonment to be followed by three years of supervised release and ordered mandatory restitution. The Court also informed Puro that any appeal would have to be taken within fourteen days. Transcript of Sentencing Hearing at 30, ECF No. 84. Her self-report date was set in October of 2012. *Id.* at 31.

After the hearing ended, Puro and Newmark spoke briefly in the hallway outside of the courtroom. Puro was crying and asked Newmark "Is that it?" While Puro asserts in her

supplemental briefing that that question was sufficient to trigger Newmark's duty to consult with her about an appeal, she herself testified that what she meant to convey with the question was that "it [the sentencing hearing] was so harsh and it went so quick." In other words, even by her own characterization, the question was not a forward-looking expression of her interest in an appeal under the circumstances in which it was uttered. In its context – as Puro had arrived at the courthouse expecting that she would be sentenced only after a lengthy evidentiary hearing – the question was a backward-looking expression of surprise at the brevity of the sentencing hearing that had just concluded. Furthermore, Puro never mentioned an appeal, or inquired about any further judicial proceedings, or communicated a desire to "fight" her sentence at all to Newmark during this conversation.

    Nor did Puro ever mention anything related to an appeal to Newmark in the weeks and months that followed the sentencing hearing, despite the fact that Puro and Newmark maintained contact and worked together on issues directly related to her sentence. For instance, Newmark filed two separate post-sentencing motions for extensions of Puro's report date, the first in early October of 2012 when a notice of appeal would have been due and the second later that same month. ECF Nos. 74, 76. Even after Puro was incarcerated in November of 2012 – more than two months after her sentencing hearing – she continued to correspond with Newmark using her Bureau of Prisons email account. By that time, Puro had learned in the prison law library about options for seeking post-conviction relief, which interested her because she believed there was an error in the restitution she had been ordered to pay. In her emails to Newmark from prison, Puro requested her file and transcripts from her sentencing proceedings, but still never mentioned an appeal. Finally, several months after Puro was sentenced and incarcerated, Newmark informed her that his representation had concluded. Puro subsequently filed her § 2255 motion pro se.

Puro thus did not say or do anything that would have reasonably demonstrated to Newmark that she was interested in appealing her sentence. Nor was a constitutional duty to consult triggered for Newmark by the second possibility, that a rational defendant in Puro's position would have wanted to appeal. Puro argues that a rational defendant in her position would have wanted to explore the pros and cons of appealing because she had "received the maximum penalty available to the Court as a result of her plea, a sentence much greater than she hoped for." Defendant's Supplemental Briefing at 8, ECF No. 104. But this characterization of Puro's sentence is myopic, as it elides completely the circumstances in which the sentence was imposed: Puro had pled guilty on Newmark's advice in order to cap her potential sentence at 60 months; the guidelines calculation, under any scenario, was significantly higher than that cap; Puro dropped all of her objections to the guidelines calculation; and the resulting applicable guidelines range was 60 months.

Simply put, Puro received the sentence she bargained for: a within-guidelines sentence that was significantly lower than the 87-108 month range that would have applied if not for the 60 month statutory maximum that Newmark had negotiated on her behalf. Puro's claim thus fails at step one of the *Strickland* test.

### 2. Prejudice.

Even if Puro could establish that Newmark's performance was deficient, she would still not be entitled to relief because her claim fails at step two of the *Strickland* test. Here, Puro must show that Newmark's constitutionally deficient performance prejudiced her. *Flores-Ortega*, 528 U.S. at 477 (citing *Strickland*, 466 U.S. at 688). To show prejudice in this scenario, Puro "must

demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with h[er] about an appeal, [s]he would have timely appealed." *Id.* at 484.

Puro argues that her testimony that she would have appealed if Newmark had informed her of her appeal rights establishes that she was prejudiced by Newmark's failure to consult. This conclusory testimony, however, is insufficient. The Supreme Court is clear that while there may be some overlap between the two steps of the *Strickland* test, the performance and prejudice prongs "are not in all cases coextensive" and the defendant's interest in an appeal by itself "is insufficient to establish that, had [she] received reasonable advice from counsel about the appeal, [s]he would have instructed h[er] counsel to file an appeal." *Id.* at 486.

Puro has not satisfied her burden of establishing that, had Newmark advised her about appealing her sentence, she would have filed an appeal. At bottom, Puro has not identified any nonfrivolous ground for an appeal that would render Newmark's failure to consult with her prejudicial. Puro's counsel asserted at the evidentiary hearing that Puro could have brought an appeal to challenge the substantive reasonableness of the sentence she received. However, that Puro – like any defendant – *could* have brought such an appeal says nothing about whether there is a reasonable probability that she *would* have brought such an appeal had she received reasonable advice from her attorney. Newmark did not believe that Puro had any viable appeal available to her; if he had thought that she did, he would have informed her and assisted her with filing a notice of appeal.

Nor can any of the various grounds Puro herself raised in her pro se motion satisfy her burden of establishing that, with proper legal advice, she would have pursued them on direct appeal. First, her claims of legal error in the restitution order are irrelevant here because § 2255 relief may not be predicated on a challenge to restitution, even when raised in the context of an

ineffective assistance claim.[1] *Shephard v. U.S.*, 735 F.3d 797, 798 (8th Cir. 2013) (because petitioner "is not claiming a right to be released from custody, . . . even if she could demonstrate that counsel was ineffective [in failing to challenge amount of restitution], the claim may not be raised in a section 2255 motion"). Second, her claims of error in the calculation of the guidelines range were procedurally defaulted when she dropped all objections in the sentencing hearing. And third, her claim of error in the Court's consideration of the statutory sentencing factors – specifically that her sentence was "more harsh than the co-conspirators in my indictment," as "5 african americans in my case" were given lower sentences despite having felonies on their records – is baseless. Puro's co-conspirators were Zack Dyab, Julia Rozhansky, and Ericvan McDavid. As the Court explained at sentencing, Dyab received a sentence of 120 months, Rozhansky 60 months, and McDavid, who received a reduction for providing substantial assistance to the Government, 45 months. Transcript of Sentencing Hearing at 15-20, ECF No. 84.

Puro's claim thus fails at step two of the *Strickland* test.

**IV.   Certificate of appealability.**

An appeal cannot be taken from a final order denying a § 2255 motion without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1). A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As here, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

---

[1] There is a discrepancy between the amount of the restitution that was discussed at the sentencing hearing on August 31, 2012 and the amount ordered in the Judgment and Commitment that issued on September 17, 2012. For the reasons discussed at the evidentiary hearing, the amount of restitution Puro owes is determined to be $5,607,247.46.

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Puro has not demonstrated that reasonable jurists would find the rejection of her constitutional claims debatable or wrong. The Court therefore declines to issue a certificate of appealability.

Based on the files, records, and proceedings herein, and for the reasons discussed above, IT IS ORDERED THAT:

1. Defendant's Motion to Vacate under 28 U.S.C. § 2255 [ECF No. 79] is DENIED.
2. A certificate of appealability is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 5, 2014                          s/Joan N. Ericksen
                                            JOAN N. ERICKSEN
                                            United States District Judge